IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCOS SAVEDRA, ID # 720270, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:03-CV-1789-G |
| | ) | |
| DOUGLAS DRETKE, Director, | ) | |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court in implementa-

tion thereof, subject cause has previously been referred to the United States Magistrate Judge.  The

findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

**A.  <u>Nature of the Case</u>:**  This is a petition for habeas corpus relief filed by a state inmate pursuant

to 28 U.S.C. § 2254.

**B.  <u>Parties</u>:**  Petitioner is an inmate currently incarcerated in the Texas Department of Criminal

Justice - Correctional Institutions Division (TDCJ-CID).  Respondent is Douglas Dretke, Director

of TDCJ-CID.

**C.  <u>Procedural History</u>:**  On May 9, 1995, a jury convicted petitioner of murder in Cause No. F-94-

56606-ANN, and he received a seventy-five year sentence.  (Pet. Writ of Habeas Corpus (Pet.) at

2.)  On August 6, 1997, the court of appeals affirmed his conviction.  (*Id.* at 3.)  Petitioner filed no

petition for discretionary review.  (*Id.*)  On January 17, 2000, petitioner filed a state petition seeking

habeas relief from his murder conviction that the Texas Court of Criminal Appeals denied on March

15, 2000.  (*Id.* ¶ 11.)  On December 19, 2002, petitioner filed a second state writ that the Texas Court of Criminal Appeals dismissed as an abuse of the writ on January 23, 2003.  (*Id.*; Mem. Supp. at 1.)

Petitioner filed the instant petition on August 6, 2003, when he signed and placed it in the prison mail system.  (Pet. at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).  In his petition,[1] petitioner claims that he is being held unlawfully because (1) the prosecution failed to disclose favorable evidence; (2) the prosecution introduced extraneous offense evidence; (3) his attorney had a conflict of interest; and (4) his attorney rendered ineffective assistance by not adequately investigating his case and failing to explore defensive theories.  (Pet. at 7-8.)  With respect to his first claim, petitioner asserts that the prosecution failed to disclose that the State had blood samples from the crime scene which belonged to neither he nor the victim.  (Mem. Supp. at 3.)  He further asserts that the State failed to disclose statements of its chief witness that were contrary to trial testimony.  (*Id.*)  With respect to the second claim, petitioner asserts that the State introduced evidence of an aggravated assault for which petitioner has never been convicted.  (*Id.* at 4.)  The alleged conflict of interest concerns a failure to pay defense counsel and counsel's alleged

---

[1] Although petitioner specifically challenges his murder conviction in his petition, (Pet. at 2), he also indicates in his supporting memorandum that he specifically challenges the dismissal of his second state habeas application as an abuse of the writ, (Mem. Supp. at 1).  Alleged errors in the state habeas process raise no claim cognizable under 28 U.S.C. § 2254.  Federal habeas relief cannot be had "absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States."  *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995); *accord* 28 U.S.C. § 2254(a).  This Court cannot grant habeas corpus relief "to correct alleged errors in state habeas proceedings."  *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (holding that habeas relief was not available for such alleged errors).  "[E]rrors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief."  *Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999).  Such errors necessarily fail "because infirmities in state habeas proceedings do not constitute grounds for relief in federal court."  *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997).  For all of these reasons, the Court considers the instant action solely as a challenge to petitioner's 1995 murder conviction.

statement on the day of trial that petitioner should not expect more than a "token representation" in view of the lack of payment. (*Id.* at 5.) In his fourth claim, petitioner specifically alleges that counsel failed to investigate the unexplained blood sample and contradictory statement by the State's witness and failed to file pre-trial motions to discover such information. (*Id.* at 6.) Petitioner also alleges that counsel failed to explore or develop a self-defense theory and failed to request a jury charge on such defense. (*Id.*)

In an effort to further develop the factual bases of petitioner's claims, the Court sent petitioner a Magistrate Judge's Questionnaire (MJQ) on September 4, 2003. On October 16, 2003, the Court received petitioner's answers to the MJQ. Petitioner therein provided some additional information related to his first claim, including that the witness statement allegedly withheld from him suggested a self-defense theory. (*See* Answers to Questions 1-3 of MJQ.) The Court has not ordered respondent to answer the instant petition.

## II.  STATUTE OF LIMITATIONS

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of the Act substantially changed the way federal courts handle habeas corpus actions. One of the major changes is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The one-year period is calculated from the latest of either (A) the date on which the judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action

3

in violation of the Constitution or laws of the United States is removed, if the applicant was pre-

vented from filing by such State action; (C) the date on which the Supreme Court initially recognizes

a new constitutional right and makes the right retroactively applicable to cases on collateral review;

or (D) the date on which the facts supporting the claim became known or could have become known

through the exercise of due diligence. *See id.* § 2244(d)(1)(A)-(D).

Petitioner has alleged no state-created impediment under subparagraph (B) that prevented

him from filing his federal petition. Nor does he base his petition on any new constitutional right

under subparagraph (C). Thus, as § 2244(d)(1) relates to this case, the Court will calculate the one-

year statute of limitations from the latest of (A), the date petitioner's conviction became final, or

(D), the date on which he knew or should have known with the exercise of due diligence the facts

supporting his claims.

With regard to subparagraph (A), the date petitioner's conviction became final, petitioner

appealed his conviction in this case but filed no petition for discretionary review (PDR). The state

conviction therefore becomes final for purposes of § 2244(d) upon the expiration of the time for

seeking further review through the filing of a PDR, *i.e.* thirty days after the appellate court rendered

its judgment on August 6, 1997. *See Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003) (rejecting

reliance upon the date of mandate and relying on TEX. R. APP. P. 68.2 for the thirty day period to

file a PDR). Petitioner's state judgment of conviction thus became final on September 5, 1997.

With regard to subparagraph (D), the date on which he knew or should have known with

the exercise of due diligence the facts supporting his claims, the Court sent petitioner a question-

naire to ascertain precisely when petitioner discovered the factual basis for his claim that the State

withheld evidence.  In answer to that questionnaire, petitioner explained that he contacted his former attorney in March or April 2002 before filing his second state application for writ of habeas corpus, and that his attorney informed him "that after trial he had discovered" that the State had recovered the blood samples.  (*See* Answers to Questions 1 and 2 of MJQ.)  Petitioner knew the factual basis for the alleged conflict of interest on the day of trial.  He knew the factual basis for the alleged deficiencies of counsel at or before trial.  When the State introduced the extraneous assault offense, petitioner would have immediately known the factual basis for his claim that the State deprived him of a fair trial by such introduction.

Section 2244(d)(1)(D) does not commence the statute of limitations merely upon actual knowledge of the factual basis for claims raised in a federal petition for writ of habeas corpus. Congress specifically included a due diligence provision so as to require state inmates to discover the factual predicate of their claims without undue delay.  "The phrase 'due diligence' is not defined anywhere in the AEDPA, but should be considered in light of the 'totality of the circumstances' present including a petitioner's confinement in prison and any special restrictions that incarceration may impose." *Frazier v. Rogerson*, 248 F. Supp. 2d 825, 833 (N.D. Iowa 2003).  The federal petitioner has the burden "to persuade the court that he has exercised due diligence." *Id.*  To carry that burden, the petitioner should "show some kind of measure of prudence, activities or assiduity as may be properly expected from and ordinarily exercised by a reasonable and prudent person under the particular circumstances present." *Id.*

In this instance, petitioner provides nothing to show that he in fact actually learned of the suppression of evidence in March or April 2002 or that he could not have learned of such alleged

5

suppression well before then.  From petitioner's own statement, his former attorney learned of the claimed suppression after his trial.  When petitioner sought the attorney's assistance for a second state application for writ of habeas corpus, the attorney readily conveyed the information.  Nothing before the Court indicates that petitioner could not have earlier discovered the alleged suppression of evidence by contacting his former attorney.  From the information before it, the Court finds that, through the exercise of due diligence, petitioner should have discovered the factual basis for the alleged suppression by the time his conviction became final on September 5, 1997.  The Court reasonably expects that a reasonable and prudent person in petitioner's circumstances would have asked his former attorney about potential bases for habeas relief within twenty-eight months of his murder conviction.[2]

The Court determines that the facts supporting the claims raised in the instant petition for habeas relief  became known or could have become known prior to the date petitioner's state judgment of conviction became final on September 5, 1997.  Because petitioner filed his petition more than one year after his conviction became final on September 5, 1997, and more than a year after the date on which he knew or should have known with the exercise of due diligence the facts supporting his claims, a literal application of § 2244(d)(1) renders his August 6, 2003 filing untimely.

---

[2]  As will be seen *infra*, the instant petition is so untimely that the Court could grant petitioner another fifteen months (until early January 1999) to discover the factual predicate of his claims, and he would still be entitled to no statutory tolling and the instant petition would be untimely in the absence of equitable tolling.  Unless petitioner could not have discovered the factual predicate for his claims by mid-January 1999 through the exercise of due diligence, the filing of his first state petition on January 17, 2000, does not statutorily toll the limitations period.

## III.  TOLLING

### A.  Statutory Tolling

The AEDPA expressly and unequivocally provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*." 28 U.S.C. § 2244(d)(2) (emphasis added).  Thus, the clear language of § 2244(d)(2) mandates that petitioner's time calculation be tolled during the period in which his state habeas application was pending before the Texas state courts.  *See also*, *Henderson* v. *Johnson*, 1 F. Supp. 2d 650, 652 (N.D. Tex. 1998) (holding that the filing of a state habeas application stops the one-year period until ruling on state application).

When petitioner filed his first state petition on January 17, 2000, the statutory limitations period had already expired because the limitations period commenced no later than September 5, 1997.  For the same reason, petitioner's second state application also does not statutorily toll the limitations period.  Thus, the statutory tolling provision does not save the August 6, 2003 federal petition.

### B.  Equitable Tolling

Because the instant petition appeared potentially untimely, the Court asked petitioner to "provide all reasons why [it] should not deem your federal petition untimely."  (*See* Question 3 of MJQ.)  Petitioner answered that it would be a miscarriage of justice to deny the petition as untimely because he is "innocent of the crime" for which he was convicted.  (See Answer to Question 3 of

7

MJQ.)  He further claims that he "is an illegal immigrant uneducated and totally dependent on other 'inmate writ-writers' for litigation purposes."  (*Id.*)

The Fifth Circuit Court of Appeals held in *Davis v. Johnson*, 158 F.3d 806 (5th Cir. 1998), "as a matter of first impression, that the AEDPA one-year limitations period was a statute of limitations, not a bar to federal jurisdiction . . . [and thus] could be equitably tolled, albeit only in 'rare and exceptional circumstances.'" *Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000) (citations omitted).  "Equitable tolling applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights."  *See Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).  "The doctrine of equitable tolling preserves a [party's] claims when strict application of the statute of limitations would be inequitable."  *Davis*, 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)).  Nevertheless, a petitioner "is not entitled to equitable tolling" unless he "diligently pursue[s] his § 2254 relief." *Coleman*, 184 F.3d at 403.  "[S]uch tolling is available only when the petitioner meets the high hurdle of showing (1) extraordinary circumstances (2) beyond his control (3) that made it impossible to file his petition on time."  *Henderson v. Johnson*, 1 F. Supp. 2d 650, 654 (N.D. Tex. 1998). "[E]quity is not intended for those who sleep on their rights." *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989).  "The petitioner bears the burden of proof concerning equitable tolling, and must demonstrate 'rare and exceptional circumstances' warranting application of the doctrine." *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) (footnote omitted).

*1. Actual innocence*

Petitioner's claim of actual innocence is not an adequate basis for equitably tolling the limitations period. A claim of actual innocence "does not constitute a 'rare and exceptional' circumstance, given that many prisoners maintain they are innocent." *See Felder*, 204 F.3d at 171 & n.8. In addition, petitioner has not shown himself to be actually innocent of murder. The assertion of such claim encumbers petitioners with a heavy burden:

> To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence."

*Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *accord Finley v. Johnson*, 243 F.3d 215, 221 (5th Cir. 2001). From the claims raised in the instant petition, it appears that petitioner believes that he has a viable self-defense theory and that the allegedly withheld evidence shows his innocence. However, a self-defense theory does not equate to actual innocence. In addition, from the information before it, the Court does not find that the allegedly withheld evidence satisfies the heavy burden that petitioner carries with respect to a claim of actual innocence.

**2. *Ignorance of the Law***

With regard to petitioner's claim that he is entitled to equitable tolling based on his ignorance of the law, "ignorance of the law or of statutes of limitations is insufficient to warrant tolling." *Felder*, 204 F.3d at 172. Additionally, neither unfamiliarity with the legal process, whether "due to illiteracy or any other reason", nor "lack of representation during the applicable filing period merits equitable tolling." *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999). That petitioner may be an

uneducated immigrant provides no basis for equitable tolling. *Cf. id.* at 392 (holding that illiteracy is insufficient to obtain equitable tolling); *United States v. Cordova*, 202 F.3d 283, No. 99-1306, 1999 WL 1136759, at *1 (10th Cir. Dec. 13, 1999) (holding that a lack of fluency in English language is not extraordinary circumstance which would warrant equitable tolling) (Table; text on Westlaw).

### 3. *Diligence*

As previously noted, the Fifth Circuit Court of Appeals has concluded that a petitioner "is not entitled to equitable tolling" unless he "diligently pursue[s] his § 2254 relief." *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999). In *Coleman*, the appellate court found that an unexplained six-month delay after the state court denied the state petition made the circumstances of that case "not extraordinary enough to qualify for equitable tolling." *Id.*

In this instance, petitioner provides no adequate explanation for the entire twenty-eight month delay between when his conviction became final on September 5, 1997, and the filing of his first habeas petition on January 17, 2000. Nor has petitioner explained the thirty-three month delay between the denial of his first state habeas application on March 15, 2000, and the filing of his next state application on December 19, 2002. Even if the Court were to find that petitioner actually learned of the factual basis for his suppression claims at the end of April 2002, he does not explain why it took him more than seven months to file his December 19, 2002 state application. In addition, after the Texas Court of Criminal Appeals dismissed that second petition on January 23, 2003, petitioner did not file the instant action until August 6, 2003, more than six months later. Without adequate explanation for these multiple lengthy delays, the circumstances of this case are not extraordinary enough to qualify for equitable tolling. Petitioner has exercised insufficient dili-

10

gence to warrant equitable tolling. He has not cleared the high hurdle of showing extraordinary circumstances beyond his control that made it impossible to file his petition on time. Consequently, equitable tolling is not warranted in this case.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court find the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254 barred by statute of limitations and **DENY** it with prejudice.

**SIGNED this 19th day of April, 2005.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE